# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

F I L E D
NOV – 8 2018
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

WAYNE LEWIS,           )
           )
     Plaintiff,       )
           )
v.                  )     Civil Action No. 3:17CV69–HEH
           )
J.D. WINFREE, *et al.*,    )
           )
     Defendants.    )

## MEMORANDUM OPINION
### (Granting Motion for Summary Judgment)

Wayne Lewis, a federal inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action. Lewis's claims flow from a conviction for an institutional infraction when he was incarcerated in the Pamunkey Regional Jail. Lewis names the following individuals as the defendants: Sergeant J.D. Winfree; Captain S.L. Cook; and Superintendent James C. Willett ("Defendants"). Lewis demands relief upon the following grounds:

Claim 1     Defendant Winfree placed Lewis in a strip cell on October 26, 2015 for allegedly breaking a sprinkler in his cell. (ECF No. 2, at 3.) In the strip cell, Lewis was left "'naked', without a bed mattress, and no adequate drinking water, including [Lewis] not [being] able to shower for approximately 8–days." (*Id.* (citation omitted).)[1] Such actions violated Lewis's rights under (a) the Eighth Amendment, (*id.*), and (b) the Due Process Clause, (*id.* at 4).

Claim 2     Defendant Cook discriminated under the Equal Protection Clause against Lewis when Cook gave Lewis a 60–day sanction for breaking the sprinkler, but ultimately reduced Lewis's white cellmate's sanction to merely twenty days. (ECF No. 1, at 4.)

---

[1] The Court corrects the capitalization, spelling, spacing, and punctuation in the quotations from the parties' submissions.

Claim 3    (a) "Colonel James C. Willett is responsible for author[ing] the policies, procedures, rules and regulations . . . which permits" an inmate to be deprived of "clothing, bedding, unlimited access to lavatory and showers" in violation of the Eighth Amendment. (*Id.* at 4–5.) (b) These actions also violated the Due Process Clause. (*Id.* at 5.)

Defendants have moved for summary judgment. Lewis has responded.

## I. STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (citing *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

In support of their Motion for Summary Judgment, Defendants submitted, *inter alia*, the following evidence: declarations from Captain S. Cook ("Cook Decl. I," ECF No. 30–1; "Cook Decl. II," ECF No. 30–5), Superintendent Willett ("Willett Decl.," ECF No. 30–2), Sergeant Winfree ("Winfree Decl.," ECF No. 30–4), and a host of institutional records. Lewis submitted his own declaration ("Lewis Decl." ECF No. 2–1)[2] and swore to the contents of the Complaint. In light of the foregoing submissions, the following facts are established for the Motion for Summary Judgment.

---

[2] Lewis also swore to the contents of a memorandum of law under penalty of perjury. (ECF No. 2, at 7.) The Court, however, informed Lewis that "the Court will not consider as evidence in opposition to any motion for summary judgment a memorandum of law and facts that is sworn to under penalty of perjury." (ECF No. 13, at 2.)

## II. UNDISPUTED FACTS

### A.    Circumstances Leading to the Infraction

On October 26, 2015, Lewis was confined in the Pamunkey Regional Jail ("the Jail"). (Willett Decl. ¶¶ 11–12.) Lewis shared cell F-45 with Lea Owens. (*Id.* ¶¶ 10, 12.) On October 26, 2015, F-Unit of the Jail was on lockdown. (*Id.* ¶ 11.) "During a lockdown, inmates are prohibited from exiting their cells." (*Id.*)

Around 5:00 or 6:00 p.m., Sergeant Winfree received a call that a sprinkler head had been broken in one of the cells in F-Unit. (Winfree Decl. ¶ 6.) Sergeant Winfree responded to the call and observed a disabled sprinkler head in Lewis's cell. (*Id.*) Water was flowing from the hole in the wall where the sprinkler head had been. (*Id.*) Thereafter, Sergeant Winfree interviewed inmates Lewis and Owens. (*Id.*) Both Lewis and Owens denied knowing how the sprinkler head became broken. (*Id.*) Sergeant Winfree then spoke with Officer Duke in the Jail's maintenance department, who told Winfree "that the sprinkler heads are firmly attached to the walls and would not become detached unless they were tampered with." (*Id.* ¶ 7.)

Winfree also spoke with a technician who stated that around the time that the sprinkler head broke, inmates throughout F-Unit "were banging on their doors, making noise and causing a distraction." (*Id.* ¶ 8.) Based on Officer Duke's advice, Sergeant Winfree charged Lewis and Owens with "Interfering with Security Operations" and "Tampering with Security or Safety Equipment." (*Id.* ¶ 9.) Additionally, Sergeant Winfree assigned Lewis and Owen to the Destructive Inmate Program. (*Id.*)

Although Sergeant Winfree assigned Lewis to the Destructive Inmate Program, he "was not involved in implementing the program, nor did [he] directly supervis[e] Lewis while he was assigned to the program." (*Id.* ¶ 14.)

## B. Destructive Inmate Program

Lewis and Owen were housed in the Special Housing Unit ("SHU"), while assigned to the Destructive Inmate Program. (*Id.* ¶ 13.) The Jail uses the Destructive Inmate Program to control inmates who damage Jail property. (Willett Decl. ¶ 8.) "The program lasts for eight days. Assignment to the Destructive Inmate Program is not punitive, but intended to control the inmate's behavior and prevent additional property damage or injury." (*Id.*)

> Inmates assigned to the Destructive Inmate Program are placed on "strip cell" status. Inmates often use personal items to damage jail property by, for example, clogging the toilet with clothing or bedding. Thus, when an inmate is assigned to strip cell status, all of his personal property is removed from his cell, except for his boxers and undershirt. If the inmate does not cause further property damage, his personal items are returned to him incrementally over the subsequent eight-day period.

(*Id.* ¶ 9.) Specifically, pursuant to the Jail's policy, after two days, the inmate's mattress would be returned if he continued to behave. (*Id.* ¶ 14.) After four days, the inmate's uniform would be returned, and after six days, the inmate's blankets would be returned. (*Id.*) Additionally, inmates in the program are given an opportunity to shower once per day. (*Id.*) "Every cell in the Special Housing Unit is equipped with a toilet and sink. Therefore, Lewis would have had continuous access to drinking water while housed in the SHU. Restricting an inmate's access to water is not part of the Destructive Inmate Program." (*Id.* ¶ 15; *accord* Winfree Decl. ¶ 15.)

**C. Reconciling Lewis's and Defendants' Version of the Conditions in the Destructive Inmate Program**

Lewis swears that, "Winfree had me . . . stripped from my clothes and left me in the cell 'naked' without a bed mattress and no adequate drinking, including me not able to shower for approximately 8-days." (Lewis Decl. ¶ 3.) Lewis's vague or conclusory comments about his clothing and water fail to create genuine material disputes of fact. *See United States v. Roane*, 378 F.3d 382, 400–01 (4th Cir. 2004) (observing that "[a]iry generalities" and "conclusory assertions" cannot "stave off summary judgment") (alteration in original) (internal quotation marks omitted); *see Shabazz v. Va. Dep't of Corr.*, No. 3:10CV638, 2013 WL 1098102, at *4 n.13 (E.D. Va. Mar. 15, 2013). "When a motion for summary judgment is made . . . ., an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or . . . otherwise . . ., must set forth *specific facts* showing that there is a genuine issue for trial." *Tyler v. Prince George's Cty., Maryland*, 16 F. App'x 191, 192 (4th Cir. 2001) (internal quotation marks omitted) (citation omitted); *see Walker v. Tyler Cty. Comm'n*, 11 F. App'x 270, 274 (4th Cir. 2001). Here, Lewis's declaration is conspicuously short of specific facts and appears calculated to shade the case in his favor, but avoid the possibility of being held guilty for perjury. *See Price v. Rochford*, 947 F.2d 829, 832 (7th Cir. 1991) (refusing to consider documents which were verified in such a manner as to avoid the possibility of perjury).

With respect to drinking water, Lewis fails to explain what was inadequate about the water from the sink in his cell. *Sweet v. S.C. Dep't of Corr.*, 529 F.2d 854, 862 (4th

Cir. 1975) (refusing to consider inmate's testimony that his diet was inadequate when the inmate "did not specify in what way it was inadequate or deficient"). With respect to his clothing, although Lewis contends prison officials took his clothing and left him naked, Lewis felt the need to enclose the word naked with the textual equivalent of air quotes. Employing air quotes "is typically intended to suggest that the speaker believes the words being stated are not actually appropriate or accurate for the given situation." *Merchant v. Fairfax Cty., Va.*, 778 F. Supp. 2d 636, 640 n.6 (E.D. Va. 2011) (citation omitted), *aff'd sub nom. Merchant v. Bauer*, 677 F.3d 656 (4th Cir. 2012). Given these circumstances, the reasonable inference is that Lewis was left without most, but not all of his clothes. Or, as represented by Defendants, and not adequately disputed by Lewis, Lewis was stripped down to his boxers and undershirt.

Accordingly, from the evening of October 26, 2015 until November 3, 2015, Lewis was confined to a cell in just his boxers and undershirt. During this period, Lewis did not have a mattress and was not allowed to shower. (Lewis Decl. ¶ 3.) However, Lewis did have a toilet and sink in his cell. (Winfree Decl. ¶ 15.) Furthermore, after October 31, 2015, Jail officials returned Lewis's blankets. (Willett Decl. ¶ 14.)

D. **Convictions and Appeals of the Institutional Infractions**

On October 26, 2015, Lewis was served with a Notice of Disciplinary Charges for "Interfering with Security Operations" and "Tampering with Security or Safety Equipment." (Winfree Decl. ¶ 9.) On November 4, 2015, Officer Mould conducted Lewis's disciplinary hearing on the above charges. (ECF No. 30–13, at 1.) At the hearing, Lewis asserted that he was asleep when the sprinkler went off. (*Id.*) Lewis also

7

asserted that he did not see inmate Owens activate the sprinkler, which is why he did not say anything. (*Id.*) Lewis was found guilty of both offenses and sentenced to thirty days of disciplinary detention on each charge. (*Id.*)

At his disciplinary hearing, inmate Owens pled guilty. (ECF No. 30–14, at 1.) Owens "stated it was an accident and that [inmate] Lewis had nothing to do with it." (*Id.*) Owens was found guilty and sentenced to thirty days of disciplinary detention on each charge. (*Id.*)

Owens appealed his sentence. (ECF No. 30–14, at 2.) Owens insisted that he was truly sorry for what happened. (*Id.*) Given Owens's clean record and honesty, Captain Cook suspended twenty days of Owens's sentence for the charge of interfering with security operations. (*Id.* at 3.)

Lewis also appealed his conviction. (ECF No. 30–15, at 1.) Lewis asserted that he had nothing to the do with incident. (*Id.*) In denying Lewis's appeal, Captain Cook stated:

> You stated at your disciplinary hearing that you were asleep up until the sprinkler head was broke off in your cell. However, approximately 30 minutes prior to this and up until the sprinkler head was broke off, your entire unit, especially your side of the unit which was reported by several witnesses was screaming banging/kicking cell because of being locked down for the installation of new inmate phones. The investigating supervisor stated that you in particular, showed no remorse; but, instead thought the incident was "funny". In conclusion, I concur with the hearing officer's findings of guilt and found the disciplinary detention sanctions to be fair and appropriate.

(*Id.* at 2.) Additionally, Captain Cook "was advised by several officers in the SHU that during prehearing detention, Lewis had coerced Owens into admitting that he had broken the sprinkler." (Cook Decl. II ¶ 15.) Captain Cook "found these reports to be believable

because Owens had vehemently denied breaking the sprinkler during the investigation, but abruptly changed his position and admitted to it during the disciplinary hearing." (*Id.*)

## III. Analysis

### A.   Claims 1(a) and 3(a) – Eighth Amendment

In Claim 1(a), Lewis contends that Sergeant Winfree violated his rights under the Eighth Amendment when Sergeant Winfree placed him in the Destructive Inmate Program.  In Claim 3(a), Lewis contends that Colonel Willett violated Lewis's rights under the Eighth Amendment because he "is responsible for author[ing] the policies, procedures, rules and regulations . . . which permits" an inmate to be deprived of "clothing, bedding, unlimited access to lavatory and showers." (ECF No. 1, at 4–5.)

To survive summary judgment on an Eighth Amendment claim, an inmate must demonstrate that "the prison official acted with a sufficiently culpable state of mind (subjective component) and . . . the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (quoting *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 298–300 (1991)). "What must be established with regard to each component 'varies according to the nature of the alleged constitutional violation.'" *Williams*, 77 F.3d at 761 (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)).

9

When an inmate challenges his conditions of confinement, he must show "(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991) (internal citation omitted) (citing *Wilson*, 501 U.S. at 301–03). Under the objective prong for an Eighth Amendment claim challenging the conditions of his or her confinement, the inmate must demonstrate that the deprivation complained of was extreme and amounted to more than the "routine discomfort" that is "part of the penalty that criminal offenders pay for their offenses against society." *Strickler v. Waters*, 989 F.2d 1375, 1380 n.3 (4th Cir. 1993) (quoting *Hudson*, 503 U.S. at 9). The resulting harm to the inmate is particularly pertinent in assessing whether a distasteful condition was sufficiently extreme to constitute an unconstitutional infliction of punishment. *Id.* at 1381. Thus, "[i]f a prisoner has not suffered serious or significant physical or mental injury as a result of the challenged condition, he simply has not been subjected to cruel and unusual punishment within the meaning of the [Eighth] Amendment." *Id.*

The subjective prong of a deliberate indifference claim requires the plaintiff to demonstrate that a particular defendant actually knew of and disregarded a substantial risk of serious harm to his or her person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the

> official must both be aware of facts from which the inference could be drawn
> that a substantial risk of serious harm exists, and he must also draw the
> inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a

substantial risk of harm is not enough. The prison official must also draw the inference

between those general facts and the specific risk of harm confronting the inmate."

*Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (citing *Farmer*, 511 U.S. at 837;

*Rich v. Bruce*, 129 F.3d 336, 340 (4th Cir. 1997)). Thus, to survive a motion for

summary judgment, the deliberate indifference standard requires a plaintiff to

demonstrate that "the official in question subjectively recognized a substantial risk of

harm" and "that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee*

*v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich*, 129 F.3d at 340 n.2).

Furthermore, when the prison conditions complained of are the result of

disciplinary sanctions, the "deliberate indifference standard must be applied in a way that

accounts for the precise circumstances of the alleged misconduct and the competing

institutional concerns." *Trammell v. Keane*, 338 F.3d 155, 163 (2d Cir. 2003). The Court

must determine whether the deprivation order "was reasonably calculated to restore

prison discipline and security and, in that . . . context, whether the officials were

deliberately indifferent to [the plaintiff's] health and safety." *Id.* While this standard still

forbids prison officials from deliberately imposing conditions that pose a substantial risk

of serious harm to an inmate's health, it acknowledges

> that when a prison is facing a recalcitrant and uncontrollable inmate, it has a
> freer hand to take steps to impose discipline and ensure the inmate's own
> safety without running afoul of the Eighth Amendment. What may be

considered cruel and unusual in one case may be acceptable in another, so long as the conditions imposed have some legitimate coercive and penological purpose and are linked to correcting the behavior in question.

*Bowers v. Pollard*, 602 F. Supp. 2d 977, 989 (E.D. Wis.), *aff'd*, 345 F. App'x 191 (7th Cir. 2009).

Given these parameters, Lewis fails to satisfy either the objective or subjective prongs for his alleged Eighth Amendment claims. First, with respect to the objective prong, Lewis has failed to establish that he "suffered serious or significant physical or mental injury as a result of" his placement in the Destructive Inmate Program. *Strickler*, 989 F.2d at 1381. Indeed, Lewis has failed to advance any evidence that he suffered any injury. Furthermore, this is not an instance where the plaintiff has introduced evidence that suggests he was subjected to a significantly prolonged and severe deprivation of basic human amenities. *See Putney v. Likin*, 656 F. App'x 632, 636 (4th Cir. 2016) (reversing grant of summary judgment in favor prison officials where inmate was deprived of a mattress for four months resulting in, *inter alia*, back and muscle problems). Here, Lewis was deprived of a shower, a mattress, and some of his clothes for eight days, and his blanket for a briefer period. Nevertheless, those deprivations are a direct product of Lewis's decision to break the sprinkler in his cell and the reasonable attempt of Jail officials to prevent Lewis from utilizing either the mattress or some of his clothes to cause further damage. These circumstances, without more, fail to satisfy the objective component of an Eighth Amendment claim. *See Lowery v. Bennett,* 492 F. App'x 405, 407, 410 (4th Cir. 2012) (concluding a 10-day placement on strip-cell confinement, which included removal of prisoner's personal hygiene items, religious

books, mattress, bedding, towels, and clothing, did not violate the Eighth Amendment);

*Trammell*, 338 F.3d at 165 ("We have no doubt that Trammell was made uncomfortable by the deprivation of his clothing, but there is simply no factual dispute regarding whether the temperature in his cell posed a threat to his 'health or safety' of the sort that would disallow summary judgment in defendants' favor")[3]; *Williams v. Delo*, 49 F.3d 442, 445–46 (8th Cir. 1995) (concluding denial of all clothing and bedding for four days in response to inmate's attack on a prison visitor did not violate the Eighth Amendment); *Johnson v. Fields*, No. 2:14–CV–38–FDW, 2017 WL 5505991, at *10 (W.D.N.C. Nov. 16, 2017) ("Plaintiff's claim that he was denied a shower and clean clothes for twelve days is insufficient as a matter of law to maintain an Eighth Amendment claim.").

Lewis's showing on the subjective prong is even weaker. For the reasons described above, Lewis fails to demonstrate the conditions to which he was subjected to between October 26, 2015 and November 3, 2015 posed a substantial risk of serious harm to his person. Although, the conditions described by Lewis are harsher than those prescribed by the Jail's policy for the Destructive Inmate Program, Lewis fails to demonstrate that Sergeant Winfree, who merely assigned Lewis to the program and did not supervise the implementation of the program for Lewis, was aware that Jail staff had deviated from the program. Thus, Sergeant Winfree had every reason to believe that pursuant to the Jail's policy, after two days Lewis's mattress was returned; after four days

---

[3] In *Trammell*, in response to his unruly behavior the inmate was "continuously deprived of clothing for three to four weeks, and was deprived of his mattress and blanket for slightly less time." 338 F.3d at 159.

Lewis's uniform was returned, and after six days Lewis's blankets were returned. (*See* Willett Decl. ¶ 14; Winfree Decl. ¶ 14.) Additionally, as far as Sergeant Winfree knew, Lewis was provided an opportunity to shower once per day. (*See* Willett Decl. ¶ 14.) Sergeant Winfree's knowledge that Lewis was subjected to such conditions fails to support a claim of deliberate indifference. *See Lowery*, 492 F. App'x at 407, 410. Similarly, Colonel Willett's knowledge that Lewis was subjected to the conditions in the Destruction Inmate Program fail to support a claim of deliberate indifference. Because Lewis has failed to satisfy either the objective or subjective components for his Eighth Amendment claims, Claims 1(a) and 3(a) will be dismissed.

**B.     Claims 1(b) and 3(b) – Due Process**

In Claims 1(b) and 3(b), Lewis contends that Sergeant Winfree and Colonel Willett violated his due process rights when they denied him a shower, a mattress, and most of his clothing and other property for eight days, and denied a blanket for six days. For ease of reference the Court will refer to these deprivations as "strip cell status."

The Due Process Clause applies when government action deprives an individual of a legitimate liberty or property interest. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972). Thus, the first step in analyzing a procedural due process claim is to identify whether the alleged conduct affects a protected interest. *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997) (citations omitted). A liberty interest may arise from the Constitution itself, or from state laws and policies. *See Wilkinson v. Austin*, 545 U.S. 209, 220–21 (2005).

### 1. The Constitution Fails to Confer a Liberty Interest in Avoiding Placement on Strip Cell Status

"The Due Process Clause standing alone confers no liberty interest in freedom from state action taken 'within the sentence imposed.'" *Sandin v. Conner*, 515 U.S. 472, 480 (1995) (quoting *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)). "[C]hanges in a prisoner[']s location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his [or her] original sentence to prison . . . ." *Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991). Thus, the Constitution itself does not give rise to a liberty interest in avoiding an eight-day placement on strip-cell status. *See id.*; *Berryman v. Mullen*, No. 1:16CV47, 2017 WL 3531098, at *6 (N.D. W. Va. Aug. 17, 2017) (concluding that inmate did not enjoy a liberty interest in avoiding placement "in a 'strip cell' for 11 days without his own clothing, hygiene products, or other personal property"); *Canada v. Gilbert*, No. 7:16CV00190, 2016 WL 6082050, at *5 n.6 (W.D. Va. Oct. 18, 2016), *appeal dismissed and remanded*, 721 F. App'x 315 (4th Cir. 2018).

### 2. Lewis Fails to Demonstrate the Existence of a State-Created Liberty Interest in Avoiding Placement on Strip Cell Status

Demonstrating the existence of a state-created liberty interest, requires a "two-part analysis." *Prieto v. Clarke*, 780 F.3d 245, 249 & n.3 (4th Cir. 2015) (quoting *Tellier v. Fields*, 280 F.3d 69, 80 (2d Cir. 2000)). First, a plaintiff must make a threshold showing that the deprivation imposed amounts to an "atypical and significant hardship" or that it "inevitably affect[s] the duration of his sentence." *Sandin*, 515 U.S. at 484, 487 (1995);

*see Puranda v. Johnson*, No. 3:08CV687, 2009 WL 3175629, at *4 (E.D. Va. Sept. 30, 2009) (citing cases). If the nature of the restraint the plaintiff challenges meets either prong of this threshold, the plaintiff must next show that Virginia's statutory or regulatory language "grants its inmates . . . a protected liberty interest in remaining free from that restraint." *Puranda*, 2009 WL 3175629, at *4 (alteration in original) (quoting *Abed v. Armstrong,* 209 F.3d 63, 66 (2d Cir. 2000)).

With respect to the *Sandin* threshold analysis, the Court must first "determine what the normative 'baseline' is: what constitutes the 'ordinary incidents of prison life' for *this particular inmate?*" *Incumaa v. Stirling*, 791 F.3d 517, 527 (4th Cir. 2015) (citing *Prieto*, 780 F.3d at 253). Second, "with the baseline established, [the Court] determine[s] whether the prison conditions impose atypical and substantial hardship in relation to that norm." *Id.* (citing *Prieto*, 780 F.3d at 254). The United States Court of Appeals for the Fourth Circuit has observed that, "[a]lthough the general prison population is not the relevant atypicality baseline in all cases, it is the touchstone in cases where the inmate asserting a liberty interest was [initially] sentenced to confinement in the general population and later transferred to security detention." *Id.* at 528–29 (citing *Prieto*, 780 F.3d at 252). Nonetheless, "[t]he mere limitations on privileges, property, and activities for administratively segregated inmates 'fall[ ] within the expected perimeters of the sentence imposed by a court of law.'" *Hubbert v. Washington*, No. 7:14–cv–00530, 2017 WL 1091943, at *5 (W.D. Va. Mar. 22, 2017) (quoting *Sandin*, 515 U.S. at 485).

*Sandin* itself forecloses the notion that all forms of punitive or administrative segregation presumptively constitute an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. In *Sandin*, the Supreme Court rejected Conner's claim that he enjoyed a liberty interest in avoiding confinement in punitive segregation for thirty (30) days. *Id.* at 487. The dissent observed:

> In the absence of the punishment, Conner, like other inmates in [the] general prison population would have left his cell and worked, taken classes, or mingled with others for eight *hours* each day. As a result of disciplinary segregation, however, Conner, for 30 days, had to spend his entire time alone in his cell (with the exception of 50 *minutes* each day on average for brief exercise and shower periods, during which he nonetheless remained isolated from other inmates and was constrained by leg irons and waist chains).

*Id.* at 494 (Breyer, J., dissenting) (citations omitted). However, the majority concluded that the foregoing conditions "did not present the type of atypical, significant deprivation in which a State might *conceivably* create a liberty interest." *Sandin*, 515 U.S. at 486 (emphasis added).

In assessing whether deprivation constitutes an atypical and significant deprivation the Supreme Court has focused on the "(1) the magnitude of confinement restrictions; (2) whether the administrative segregation [or other restrictive confinement] is for an indefinite period; and (3) whether assignment to administrative segregation [or other restrictive confinement] had any collateral consequences on the inmate's sentence." *Incumaa*, 791 F.3d at 530. Here, Lewis's placement on strip cell status had no collateral consequence upon his sentence and was not for an indefinite period, but only for eight

days. Thus, those two factors do not suggest that Lewis has a protected liberty interest in avoiding strip cell status.

Furthermore, with respect to the relative magnitude of the confinement restrictions, Lewis has supplied no facts as to what life was like in the general prison population. According to Lewis, while he was on strip cell status he was denied a shower, a mattress, most of his clothing, and other property, for eight days and denied a blanket for six days. According to Jail policy, Lewis also was provided with toilet paper and personal hygiene items on an as-needed basis. (ECF No. 30–8, at 1.) Additionally, although Lewis was confined to his cell, he was able to communicate with the inmates in the other cells in the SHU (*see* Cook Decl. II ¶ 15), and was fed three meals per day (ECF No. 30–16, at 1–2).

Lewis has failed to demonstrate that the conditions he experienced during his brief confinement on strip cell status were significantly harsher than the conditions described in *Sandin* such that a State might conceivably intend to create a liberty interest in avoiding the conditions. In contrast to the inmate in *Sandin* who spent thirty days in segregated confinement and was isolated from other inmates, Lewis only spent eight days on strip cell status, and he enjoyed the ability to communicate with other inmates in the SHU while on strip cell status. *See Sandin*, 515 U.S. at 494 (Breyer, J., dissenting) (citations omitted). Given the brevity to which he was subjected to these conditions, Lewis fails to demonstrate his placement on strip cell status constituted an atypical and significant hardship in relation to the ordinary incidents of prison life. *See Beverati*, 120

F.3d at 504.[4] *But see Incumaa*, 791 F.3d at 530–32 (concluding solitary confinement for twenty years involved onerous, severely restrictive conditions and constituted an atypical and significant hardship). Furthermore, Lewis fails to show that Virginia's statutory or regulatory language "grants its inmates . . . a protected liberty interest in remaining free from" placement on strip cell status. *Puranda*, 2009 WL 3175629, at *4 (alteration in original) (quoting *Abed*, 209 F.3d at 66). Because Lewis fails to demonstrate that he enjoys a protected liberty interest in avoiding placement on strip cell status, his due process claims fail. Accordingly, Claim 1(b) and 3(b) will be dismissed.

---

[4] In *Beverati*, the Fourth Circuit found that the inmate plaintiffs did not enjoy a liberty interest in avoiding a six-month stay in administrative segregation where they described the conditions as follows:

> They claim that when they were initially placed in segregation, their cells were infested with vermin; were smeared with human feces and urine; and were flooded with water from a leak in the toilet on the floor above. And, they assert, they were forced to use their clothing and shampoo to clean the cells. In addition, Inmates maintain that their cells were unbearably hot and that the food they received was cold. Furthermore, Van Aelst submitted an affidavit indicating that those assigned to administrative segregation did not receive clean clothing, linen, or bedding as often as required by the regulations governing administrative segregation; that they were permitted to leave their cells three to four times per week, rather than seven, and that no outside recreation was permitted; that there were no educational or religious services available; and that food was served in considerably smaller portions.

*Beverati*, 120 F.3d at 504. The Fourth Circuit concluded that "although the conditions were more burdensome than those imposed on the general prison population, they were not so atypical that exposure to them for six months imposed a significant hardship in relation to the ordinary incidents of prison life." *Id.*

## C.    Equal Protection – Claim 2

The Equal Protection Clause of the Fourteenth Amendment protects against arbitrary classifications by state actors. *See* U.S. Const. amend. XIV, § 1. To survive summary judgment a prisoner must "demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Veney v. Wyche*, 293 F.3d 726, 730–31 (4th Cir. 2002) (quoting *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001)). Thereafter, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Morrison*, 239 F.3d at 654 (citations omitted). "In a prison context," disparate treatment passes muster so long as "the disparate treatment is 'reasonably related to [any] legitimate penological interests.'" *Veney*, 293 F.3d at 732 (alteration in original) (quoting *Shaw v. Murphy*, 532 U.S. 223, 225 (2001)).

In Claim 2, Lewis contends that Captain Cook violated the Equal Protection Clause because, on appeal, he reduced inmate Owens's punishment, but refused to reduce Lewis's punishment. This claim fails because the record demonstrates that Lewis and Owens were not similarly situated for purpose of punishment and that any disparate treatment was reasonably related to legitimate penological interests. Specifically, Lewis showed no remorse for his actions, thought the incident was funny, had coerced Owens into taking the blame for breaking the sprinkler and Owens had no prior record. Accordingly, Claim 2 will be dismissed.

## IV. Conclusion

The Motion for Summary Judgment (ECF No. 29) will be granted. Lewis's request for entry of default (ECF No. 35) will be denied. The action will be dismissed.

An appropriate Final Order shall accompany this Memorandum Opinion.

/s/

Henry E. Hudson
Senior United States District Judge

Date: Nov. 8, 2018
Richmond, Virginia